IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> V. <br><br> MILLENNIUM WINDOWS, INCORPORATED, PELLA PRODUCTS, LLC AND PATRICIA BRENNER, <br><br> Defendants. | Case No.: 1:23-cv-6315 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Crum & Forster Specialty Insurance Company ("CFSIC"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against Defendants, MILLENNIUM WINDOWS, INCORPORATED ("Millennium Windows"), PELLA PRODUCTS, LLC ("Pella") and PATRICIA BRENNER ("Brenner"), states as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. In this action, CFSIC seeks a determination of its rights and obligations under an insurance policy it issued to named insured Millennium Windows in connection with a third-party complaint, which asserts certain claims against Millennium Windows.

## JURISDICTION AND VENUE

2. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in this district.

5. Plaintiff CFSIC is a corporation organized and existing under the laws of the state of Delaware, with its main administrative offices located in Morristown, New Jersey. At all relevant times, CFSIC was authorized to conduct business in the State of Illinois.

6. Defendant Millennium Windows is an Illinois corporation with its principal place of business in Elk Grove Village, Illinois.

7. Defendant Pella is a Delaware limited liability company, authorized to conduct business in the State of Illinois with a registered agent located in Park Ridge, Illinois. Pella is a single member LLC. Pella Corporation is the member of the LLC with its principal place of business located in Pella, Iowa.

8. Defendant Brenner is an individual who is a resident of Arlington Heights, Illinois.

9. The Underlying Action (as defined herein) is pending in the Circuit Court for the Twenty-Second Judicial Circuit, McHenry County, Illinois.

10. CFSIC issued an insurance policy to Defendant Millennium Windows as described more fully below.

11. Defendant Millennium Windows has sought coverage as an insured under said policy in connection with the claims asserted against it in the Underlying Action.

12. The scope of the coverage available to Millennium Windows is governed by the terms, conditions, and exclusions of the policy.

13. Plaintiff CFSIC does not assert any claim against Defendant Pella in this Complaint and Defendant Pella has been named as a defendant in this action solely as a necessary party.

14. Plaintiff CFSIC does not assert any claim against Defendant Brenner in this Complaint and Defendant Brenner has been named as a defendant in this action solely as a necessary party.

## THE UNDERLYING ACTION

15. On June 29, 2021, Patricia Brenner ("Brenner") filed a complaint (the "Complaint") in a lawsuit styled Brenner v. Pella Products, Inc., Case No. 2021 LA 000178, in the Circuit Court of McHenry County, Illinois (the "Underlying Action"). A true and correct copy of the Complaint is attached hereto as Exhibit A.

16. The Complaint, alleges, *inter alia*, that Pella allegedly supplied and installed four windows in Brenner's home in 2013. Ex. A ¶¶ 2-4; 10.

17. The Complaint further alleges that, in April 2020, Brenner noticed a bulge in the drywall and the following day had the drywall removed and discovered water intrusion at the bottom of the windows installed by Pella. Ex. A ¶¶ 4-5.

18. The Complaint further alleges that, in September and October 2020, Pella worked with Brenner to repair the subject windows. the Complaint further alleges that, on October 21, 2020 an independent inspection performed by Arlamore Homes found that the repair work performed by Pella had failed to correct the leaking of the windows, that a good amount of structural damage had occurred and was still causing damage to Brenner's home. Ex. A ¶¶ 6-8.

19. The Complaint further alleges that Arlamore Homes also found that the entry of water was mostly the result of improper installation of the windows, that the installer did not follow proper installation instructions, and that mold/mildew was present. Ex. A ¶14.

20. The Complaint further alleges that all four windows supplied and installed by Pella were leaking and causing structural damage to Brenner's home and that all four windows, along

3

with the interior and exterior around them, were removed, the damage was repaired and the windows re-installed. Ex. A ¶¶ 10-11.

21. The Complaint asserts the following causes of action against Pella based on the aforementioned conduct: Count I – Breach of Contract; and Count II – Breach of the Implied Warranty of Good Workmanship. Ex. A.

22. On September 22, 2022, Pella filed a third-party complaint against Millennium Windows in the Underlying Action (the "Third-Party Complaint"). A true and correct copy of the Third-Party Complaint is attached hereto as Exhibit B.

23. The Third-Party Complaint alleges that, on May 15, 2011, Millennium Windows entered into a subcontract agreement (the "Agreement") in which it agreed to perform installation and related services for Pella products and that Millennium Windows' failure to properly install Pella products in Brenner's home in 2013 constituted a breach of the Agreement. Ex. B ¶¶ 3, 24-25.

24. The Third-Party Complaint further alleges that if Pella is found to be liable to Brenner for the purported damages to Brenner's home, Pella's liability will be because Millennium Windows breached the Agreement. Ex. B ¶ 27.

25. The Third-Party Complaint further alleges that, after notice and demand by Pella, Millennium breached the Agreement by failing to provide indemnification in accordance with Article 9 of the Agreement. Ex. B ¶¶ 31-32.

26. The Third-Party Complaint further alleges that Millennium Windows breached the Agreement by failing to provide insurance coverage required by the Agreement, including naming Pella as an additional insured under Millennium Windows' commercial general liability policies. Ex. B ¶¶ 35-37, 39.

27. The Third-Party Complaint alleges, in the alternative, that if Pella is found liable for any of the damages Brenner seeks, Pella is entitled to contribution from Millennium Windows "in an amount commensurate with the degree of comparative culpability attributable to Millennium Windows' acts and/or omissions which proximately caused and/or contributed to [Brenner]'s alleged injuries and damages." Ex. B ¶45.

28. The Third-Party Complaint further alleges that Millennium Windows improperly committed one or more of the following acts or omissions that proximately cause the alleged damages suffered by Brenner:

>  (a) Carelessly and negligently installed the subject windows in Ms. Brenner's residence;
> 
>  (b) Failed to properly inspect the installation of the subject windows after installation to determine proper installation was achieved;
> 
>  (c) Failed to install the subject windows in accordance with relevant industry standards;
> 
>  (d) Failed to install the subject windows as described by Plaintiff's Complaint against Defendant Pella . . .;
> 
>  (e) Was otherwise careless and negligent in such a way as to cause the damages described in Plaintiff's Complaint against Defendant Pella.

Ex. B ¶ 43.

29. The Third-Party Complaint asserts the following causes of action against Millennium Windows based on the aforementioned conduct: Count I – Breach of Contract; Count II – Breach of Contract – Indemnity; Count III – Breach of Contract – Failure to Procure/Provide Insurance; and Count IV – Contribution (pled alternatively). Ex. B.

## **THE POLICY**

30. CFSIC issued Commercial General Liability Policy Nos. BAK-26046-3, effective April 30, 2019 to April 30, 2020 (the "2019-2020 Policy") and BAK-26046-4, effective April 30, 2020 to April 30, 2021 (the "2020-2021 Policy") to Millennium Windows. The 2019-2020 Policy and 2020-2021 Policy are referred to, collectively, herein as the "Policies". True and correct copies of the 2019-2020 Policy and the 2020-2021 Policy are attached hereto as Exhibit C and Exhibit D, respectively.

31. The Policies provide Commercial General Liability insurance subject to a $1 million Each Occurrence Limit and a $2 million General Aggregate Limit. Ex. C at p. 9 ; Ex. D at p. 9.

32. The Commercial General Liability Coverage Part of the Policies states that the terms "you" and "your" in the Policies refers "to the Named Insured" under the Policies. Ex. C at p. 11; Ex. D at p. 11. The Named Insured of the Policies is Millennium Windows. Ex. C at p. 1.; Ex. D at p. 1.

33. The terms of the Policies are substantially similar and are set forth below as contained in the 2019-2020 Policy. Coverage A of the Commercial General Liability Part of the Policies provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We

6

may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But: […]

\*\*\*

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; […]

(2) The "bodily injury" or "property damage" occurs during the policy period; . . .

\*\*\*

Ex. C at p. 11. ; Ex. D at p. 11.

34. The Policies contain, pursuant to endorsement, the following Exclusion – Continuous or Progressive Injury and Damage (the "Continuous or Progressive Injury and Damage Exclusion"), which provides as follows:

> It is agreed under **Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement,** Paragraph **b (3), c** and **d** are deleted in their entirety and the following exclusion is added to **Section I, 2. Exclusions** of this policy.
>
> This insurance does not apply to:
>
> 1. Any damages arising out of or related to "bodily injury" or "property damage" whether such "bodily injury" or "property damage" is known or unknown,
>
>    (a) which first occurred in whole or in part prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or
>
>    (b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period; or

7

      (c) which were caused, or are alleged to have been caused, by the same condition(s) or defective construction which first existed prior to the inception date of this policy.

2. Any damages arising out of or related to "bodily injury" or "property damage" whether known or unknown, which are in the process of adjustment, settlement, or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

Ex. C at p. 43. ; Ex. D at p. 43.

    35.    The 2020-2021 Policy also contains, pursuant to endorsement, the following Exclusion – Fungi or Bacteria ("Fungi or Bacteria Exclusion"), which provides as follows:

A. The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

\* \* \*

8

    **C.** The following definition is added to the **Definitions** Section:

> "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Ex. D at p 33.

    36.    **SECTION V – DEFINITIONS** of the Policies contains the following relevant definitions:

***

    13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

    17.    "Property damage" means:

        a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of physical injury that caused it; . . .

***

Ex. C at pp. 22, 24-25 ; Ex. D at pp. 22, 24-25.

## THIS DISPUTE

    37.    CFSIC received notice that coverage is sought by Millennium Windows under the Policies in connection with the claims asserted against it in the Underlying Action.

    38.    CFSIC has determined through its coverage investigation that it owes no obligation to defend or indemnify Millennium Windows in connection with the claims asserted against it in the Third-Party Complaint filed in the Underlying Action.

    39.    CFSIC has advised Millennium Windows in writing that it disclaims any obligation under the Policies to provide it a defense or indemnify it in connection with the claims asserted against it in the Underlying Action.

40. CFSIC now brings this action to obtain a judicial declaration that the Policies provide no defense or indemnity obligations to Millennium Windows in connection with the claims asserted against it in the Underlying Action.

## COUNT I

### No Duty to Defend or Indemnify Millennium Windows - (Continuous and Progressive Damage Exclusion Precludes Coverage)

41. CFSIC incorporates by reference herein paragraphs 1 through 40, as if the same were fully set forth at length.

42. Pursuant to endorsement, Coverage A of the Policies was modified to include a Continuous or Progressive Injury and Damage Exclusion which provides, in pertinent part, that "[t]his insurance does not apply to . . . "[a]ny damages arising out of or related to . . . 'property damage' whether such . . . 'property damage' is known or unknown, (a) which first occurred in whole or in part prior to the inception date of this policy . . .; or (b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy . . . even if the . . . 'property damage' continues during this policy period; or (c) which were caused, or are alleged to have been caused, by the same condition(s) or defective construction which first existed prior to the inception date of this policy." The Continuous and Progressive Damage Exclusion further provides that CFSIC "shall have no duty to defend any insured against any loss, claim, 'suit,' or other proceeding alleging damages arising out of or related to . . .'property damage' to which this endorsement applies." Ex. C at p. 43; Ex. D at p. 43.

43. The Policies define "property damage" to mean "physical injury to tangible property, including resulting loss of use of that property." Ex. C at p. 25; Ex. D at p. 25.

10

44. The Third-Party Complaint alleges that there was physical damage caused to Brenner's residence as a result of water intrusion caused by Millennium Windows' failure to properly install four windows in the residence in 2013. Ex. B ¶¶ 18-19.

45. It is further alleged in the Underlying Action that, in April 2020, Brenner noticed a bulge in the drywall, and the next day discovered water intrusion at the bottom of the windows which were installed by Pella in 2013. Ex. B ¶¶ 12, 17-19; Ex. A ¶¶ 4-5.

46. It is further alleged in the Complaint in the Underlying Action that, on October 21, 2020, an independent inspection performed by Arlamore Homes found that the repair work performed by Pella had failed to correct the leaking of the windows, and that a good amount of structural damage had occurred and was still causing damage to Brenner's home. Ex. B ¶ 18; Ex. A ¶¶ 7-8.

47. As such, the Complaint in the Underlying Action alleges that "property damage" to the Brenner home resulting from the faulty installation of the Pella windows: i) first occurred, in whole or in part, prior to the April 30, 2019 inception date of the 2019-2020 Policy and the April 30, 2020 inception date of the 2020-2021 Policy; ii) was in the process of occurring as of the inceptions dates of the Policies and continued during the effective periods of the Policies; and/or iii) was caused by the same condition(s) or defective construction which first existed prior to the inception date of the Policies.

48. The Policies do not afford coverage for the claims asserted against Millennium Windows in the Underlying Action because the Continuous and Progressive Damage Exclusion of Coverage A of the Commercial General Liability Coverage Part of the Policies operates to bar coverage for such claims.

WHEREFORE, CFSIC seeks a judgment that it owes no duty to defend or indemnify Millennium Windows in connection with the claims asserted against it in the Third-Party Complaint filed in the Underlying Action based on the operation of the Continuous and Progressive Damage Exclusion of Coverage A of the Commercial General Liability Coverage Part of the Policies.

**COUNT II**

**(No Duty to Defend or Indemnify Millennium Windows –
Fungi or Bacteria Exclusion of Coverage A of the 2020-2021 Policy
Precludes Coverage)**

49. CFSIC incorporates by reference herein paragraphs 1 through 48, as if the same were fully set forth at length.

50. Pursuant to endorsement, Coverage A of the 2020-2021 Policy was modified to include a Fungi or Bacteria Exclusion which provides, in pertinent part, "[t]his insurance does not apply to . . . .'property damage' which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any 'fungi' or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such . . . damage" and b. [a]ny loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, 'fungi' or bacteria, by any insured or by any other person or entity." Ex. D at p. 33.

51. The Fungi or Bacteria Exclusion defines "Fungi" to include, in pertinent part, "mold or mildew". Ex. D at p. 33.

52. The Complaint in the Underlying Action alleges that the independent inspection performed by Arlamore Homes found, inter alia, that the entry of water in Brenner Home was mostly the result of improper installation of the windows, that the installer [Millennium Windows] did not follow proper installation instructions, and that mold/mildew was present. Ex. A ¶¶ 8, 10-11, 14.

53. The Third-Party Complaint, which is based upon the allegations and relief Brenner asserts in the Complaint, and attaches the same as an exhibit, cites the damage found by Arlamore Homes in its October 21, 2020 inspection, which included that "[m]old/mildew was present." Ex. B ¶¶ 12-13; Ex. A ¶¶ 7-8, 14.

54. To the extent Millennium Homes is found liable in the Underlying Action for damages resulting from the presence of mold and/or mildew at the Brenner home, the 2020-2021 Policy does not afford coverage because the Fungi or Bacteria Exclusion operates to preclude coverage for such claims.

WHEREFORE, CFSIC seeks a judgment that it owes no duty to defend or indemnify Millennium Windows in connection with the claims asserted against it in the Third-Party Complaint filed in the Underlying Action based on the operation of the Fung or Bacteria Exclusion of Coverage A of the Commercial General Liability Coverage Part of the 2020-2021 Policy.

## **PRAYER FOR RELIEF**

Plaintiff Crum & Forster Specialty Insurance Company hereby respectfully requests the entry of an order and judgment in its favor and against Defendants Millennium Windows, Incorporated, Pella Products, LLC and Patricia Brenner declaring as follows:

a. This court has jurisdiction over the parties and the subject matter of this litigation;

b. The Policies do not provide coverage to Defendant Millennium Windows, Incorporated for the claims asserted against it in the Underlying Action;

c. Crum & Forster Specialty Insurance Company does not owe a duty under the Policies to defend or reimburse defense costs incurred by Defendant Millennium Windows, Incorporated in connection with the claims asserted against it in the Underlying Action;

d. Crum & Forster Specialty Insurance Company do not owe a duty under the Policies to indemnify Defendant Millennium Windows, Incorporated in connection with the claims asserted against it in the Underlying Action;

e. Crum & Forster Specialty Insurance Company is entitled to an award of its costs; and

f. Such other further relief as this Court deems just and appropriate.

                Respectfully Submitted,

                CRUM & FORSTER SPECIALTY INSURANCE COMPANY

Dated: August, 28 2023

By:   s/*James J. Hickey*
James J. Hickey
One of the Attorneys for Plaintiff
Crum & Forster Specialty Insurance Company


James J. Hickey (Illinois Bar No. 6198334)
James.Hickey@kennedyslaw.com
Heidi Kuffel (Illinois Bar No. 6313935)
Heidi.Kuffel@kennedyslaw.com
KENNEDYS CMK
30 South Wacker Drive, Suite 3650
Chicago, IL 60606
Phone: (312) 800-5000
Fax: (312) 207-2110